IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JUSTIN SHAMIRE WHITE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:09-CV-0040 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Came for consideration the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner JUSTIN SHAMIRE WHITE. By his habeas application, petitioner challenges his conviction for the offense of murder out of the 47th Judicial District Court of Potter County, Texas, and the resultant 30-year sentence. The undersigned United States Magistrate Judge recommends petitioner's habeas application be DENIED.

I.
STATEMENT OF FACTS/
PROCEDURAL HISTORY

Petitioner directly appealed his murder conviction to the Court of Appeals for the Seventh District of Texas arguing the evidence was legally and factually insufficient to establish he intended to kill the victim, fired the handgun that caused the victim's death, or possessed the gun that caused the victim's death. *White v. State*, No. 07-05-0271-CR (Tex.App.–Amarillo Sept.

12, 2006) (unpublished). In its opinion, the state appellate court summarized the facts as follows:

> The jury was instructed that it could find appellant guilty of murder if it found that he 1) intentionally or knowingly caused the death of David Berliner, Jr. (Berliner) by shooting at him, 2) caused the death of the victim by intending to cause the death of Bobby Hill or Jerry Hill and by shooting either one of them thereby causing the death of Berliner, or 3) intentionally or knowingly committed an act clearly dangerous to human life by discharging a firearm while in the course of committing deadly conduct. Furthermore, the evidence of record depicted that a fight occurred at a night club attended by appellant. Appellant was then seen waving either a .380 or 9mm handgun in the air. Both the club's bouncer and manager apprehended appellant, moved him to the front door, and tossed him from the establishment. Within seconds of their doing so, three to five gun shots were heard. Furthermore, a bullet of a caliber akin to a .380 struck the outside of the front door (i.e. the door through which appellant had just been removed). The door was purportedly made of steel. Next, Berliner was found lying outside on the ground within feet of that door. He had been shot in the head. The caliber of the bullet that struck him was .380.
>
> Shortly after the shots were fired, appellant approached a vehicle that was leaving the club. He entered it with gun in hand and told the occupants that he thought he had just shot either the club's bouncer or manager.
>
> The investigating officers found five empty .380 caliber shell casings on the ground in front of the club. One casing lay adjacent to Berliner. Two live rounds were also found on the ground; they were of 9mm caliber. However, testimony indicated that a 9mm firearm was capable of firing .380 caliber rounds.
>
> While evidence of record indicated that gun shots often rang out as patrons of the club left, no one saw a weapon other than that possessed by appellant. Nor is there evidence that any of the other 100 plus patrons at the bar had or fired a weapon. And, concerning the 9mm rounds found on the ground, no one could assess the length of time they had been there. In other words, they could have been dropped by someone long before the shooting.

The state appellate court determined:

> Given the evidence of 1) a fight within the bar, 2) appellant's possession and display of a .380 or 9 mm handgun, 3) appellant's physical removal from the club, 4) the temporal proximity between appellant's removal and the shots being fired, 5) the similarity in caliber between appellant's handgun and the shells found on the ground, the bullet hole in the front door, and the bullet which killed Berliner, 6) appellant's comment that he believed that he had just shot one of the two individuals that physically removed him from the club, 7) an expended .380 caliber shell lying next to Berliner, and 8) the absence of any other weapon sightings at the time, we conclude that the jury had some evidence upon which to conclude beyond reasonable doubt that appellant intentionally killed Berliner or killed him while intending to shoot and kill either the club bouncer or manager. That evidence, when compared to the entire

record, was neither weak nor overwhelmed. Nor does the controverting evidence cause us to question the integrity of the jury's verdict given appellant's statement and possession of the sole gun seen.

The state appellate court concluded the jury's verdict was supported by both legally and factually sufficient evidence and affirmed the judgment.

On August 29, 2007, petitioner filed a state application for a writ of habeas corpus alleging, among other things, ineffective assistance of appellate counsel for failing to timely notify him that his conviction had been affirmed on appeal. *Ex parte White*, No. 68,584-01. Petitioner requested, in part, that he be permitted to file an out-of-time petition for discretionary review (PDR). On January 23, 2008, the Texas Court of Criminal Appeals granted petitioner permission to file an out-of-time PDR. On February 13, 2008, petitioner timely filed a PDR asserting legal and factual insufficiency grounds. *White v. State*, No. 285-08. On May 21, 2008, the Texas Court of Criminal Appeals refused petitioner's PDR.

On August 14, 2008, petitioner filed a state application for a writ of habeas corpus challenging his murder conviction on the same grounds he now presents in this federal habeas application (see below). *Ex parte White*, No. 68,584-02. On November 5, 2008, the Texas Court of Criminal Appeals denied petitioner's habeas application without written order.

Petitioner filed this federal application for a writ of habeas corpus on February 6, 2009.

II.
PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. Petitioner was denied a fair trial because five (5) of the jurors who served on petitioner's jury were biased and prejudiced against petitioner;

2. Petitioner was denied a fair trial because the prosecution selected the jury in a racially discriminatory manner when it struck the only two (2) veniremen of

petitioner's race in violation of *Batson*;

3. There was no evidence to support petitioner's conviction for murder;

4. Petitioner was denied effective assistance of appellate counsel because counsel failed to timely notify petitioner of the state appellate court's disposition of his appeal; and

5. Petitioner was denied a fair trial because the trial court (a) erroneously dismissed the wrong juror when he dismissed the alternate juror before deliberations, (b) allowed an improper juror to serve in deliberations, and (c) wrongfully denied petitioner's motion for a new trial.

## III.
## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless that person first shows the prior adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner filed a state habeas application challenging the constitutionality of his conviction and sentence on the same grounds he asserts in this federal habeas proceeding. The Texas Court of Criminal Appeals denied petitioner's state habeas application without written order. *Ex parte White*, No. 68,584-02. The ruling of the Texas Court of Criminal Appeals constituted an adjudication of petitioner's state habeas corpus claims on the merits.[1] *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir.

---

[1] The term "adjudication on the merits" in 28 U.S.C. § 2254(d) addresses whether the state court's disposition of the claim at issue was procedural or substantive. *Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir.2002) ( *en banc* ). Nothing in this case suggests the Texas Court of Criminal Appeals disposed of petitioner's claims on a procedural basis. *See Barrientes v. Johnson,* 221 F.3d 741, 778-80 (5th Cir.2000), *cert. dismissed,* 531 U.S. 1134 (2001) (setting forth analysis to determine whether state court adjudication was merits-based). The state court denial qualifies as a full and fair review of the grounds raised therein. This Court must treat the state court's "denial" as a merits adjudication of petitioner's state habeas application. *See Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).

1999); *cf. Ex parte Thomas*, 953 S.W.2d 286 (Tex.Crim.App. 1997); *Ex parte Torres,* 943 S.W.2d 469 (Tex.Crim.App. 1997) (under Texas law a denial by the Court of Criminal Appeals signifies the court addressed and rejected the merits of the claims). Therefore, the deferential standard set forth in 28 U.S.C. § 2254(d) is applicable to this case and must be demonstrated by petitioner. Consequently, this Court's review is limited to a determination of (1) whether petitioner has shown the state court's determination that petitioner's claims were without merit was based on an unreasonable determination of the facts in light of the evidence before the state court, or (2) whether petitioner has shown the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

IV.
MERITS

Respondent has filed an answer which fully and accurately briefs the role of a federal habeas court in reviewing state prisoner applications and the appropriate standard of review set forth above. Respondent not only correctly states the applicable law for federal habeas corpus review in his answer, but also correctly analyzes how such law applies to petitioner's federal habeas application.

Petitioner does not argue that the deferential standard set forth in 28 U.S.C. § 2254(d) is not applicable to his claims, nor does he argue he has made the necessary showing to be entitled to federal habeas corpus relief. Instead, petitioner merely reurges the same grounds he presented to the state habeas court. Not only has petitioner not overcome the deferential bar, his claims, as set forth below, are without merit.

A. Denial of a Fair Trial - Jury Bias/Prejudice

By his first ground petitioner asserts he was denied a fair trial because five (5) of the jurors

who served on petitioner's jury were biased and prejudiced against petitioner.  Specifically, petitioner contends jurors McMurray, Buckstead and Baker were biased against petitioner because they knew someone incarcerated, and that jurors Taylor and Wyatt were biased against petitioner because they stated they were not able to give their full attention to the trial.  In response to these allegations, respondent presents the following:

1. That petitioner was mistaken in identifying juror Jerry McMurray as a juror with a bias for stating he had a grandson who was incarcerated when it actually was prospective juror Loraine McMurry who claimed such a relationship, and who was struck for cause by the State, and did not serve on the jury. Consequently, there was no merit to petitioner's claim that he was denied a fair trial because juror McMurray, a biased juror, served on the jury. (Answer p. 9).

2. That petitioner did not show the remaining jurors were biased or prejudiced against him because petitioner's assertions were based on mere speculation, *i.e.*, that the remaining jurors were biased or prejudiced against him simply because they knew someone incarcerated or stated they would have difficulty paying full attention to the trial. None of these jurors stated they could not be fair. (Answer p. 10).

3. That petitioner failed to rebut, by clear and convincing evidence, the implied factual finding of no juror bias by the Texas Court of Criminal Appeals, which is presumed to be correct. (Answer p. 10).

4. Petitioner failed to show the complained of jurors were actually or impliedly biased against petitioner and could not impartially judge his guilt. (Answer p. 11).

5. Petitioner failed to meet his burden of proof under the AEDPA standard of review as to Ground 1. (Answer pp. 11-12).

The Court finds respondent's answer accurately addresses all issues raised by petitioner in his first ground, and that respondent's position is well supported.  It would serve no purpose to repeat respondent's analysis of this issue.  Consequently, the Court agrees with respondent's analysis and finds petitioner has failed to meet his burden of proof under the AEDPA, and that Ground 1 is without merit and should be DENIED.

B. Denial of Fair Trial - *Batson* Violation

By his second ground, petitioner contends he was denied a fair trial because the prosecution selected the jury in a racially discriminatory manner when it struck the only two (2) veniremen of petitioner's race in violation of *Batson*. In response to petitioner's allegation of a *Batson* violation, respondent presents the following:

6.  The standard under *Batson* for showing purposeful racial discrimination in selection of a jury. (Answer pp. 12-13).

7.  That petitioner failed to show the trial court's determination that the State's explanations for its peremptory strikes were race neutral was clearly erroneous. (Answer p. 13).

8.  That petitioner failed to meet his burden of proof under the AEDPA standard of review as to Ground 2. (Answer p. 13).

The Court finds respondent's answer fully and accurately addresses the issues raised by petitioner in his second ground, and that respondent's position is well supported. Petitioner has failed to show the prosecutor's reasons for striking the jurors was not race neutral. Consequently, the Court agrees with respondent's analysis and finds petitioner has failed to meet his burden of proof under the AEDPA, and that Ground 2 is without merit and should be DENIED.

C. No Evidence

By his third ground, petitioner argues there was no evidence to support his conviction for murder. In his answer, respondent presents the following:

9.  That a petitioner may not assert factual insufficiency claims on federal habeas corpus review because the authority to conduct factual sufficiency reviews is not derived from any federal constitutional right. (Answer p. 14).

10. The standard the Court must apply in reviewing legal insufficiency claims under *Jackson v. Virginia*, 443 U.S. 307 (1979). (Answer pp. 14-15).

11. The substance of the evidence as reviewed by the state appellate court. Namely, the circumstantial evidence, recited by the appellate court, that constituted some evidence upon which the jury could conclude, beyond a

       reasonable doubt, that petitioner intentionally killed the victim or killed him while intending to shoot and kill a third person. (Answer pp. 15-16).

12. The province of the jury to assess the credibility of the evidence, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences, and the inability of a federal reviewing court to substitute its own judgment for that of the jury. (Answer p. 16).

13. That petitioner failed to meet his burden, under the AEDPA, of proving the appellate court's finding, *i.e.*, that the evidence was legally sufficient to support petitioner's conviction, was in conflict with clearly established federal law or was unreasonable. (Answer p. 16).

The Court finds respondent's answer thoroughly and accurately addresses all issues raised by petitioner in his third ground, and that respondent's position is well supported. Further, this Court's review of the state court record and appellate court's findings demonstrates the evidence was, in fact, sufficient to support petitioner's conviction. Consequently, the Court agrees, and hereby finds, petitioner has failed to meet his burden of proof under the AEDPA, that the evidence was constitutionally sufficient to support his conviction, and that Ground 3 is without merit and should be DENIED.

### D. Denial of Effective Assistance of Appellate Counsel

By his fourth ground, petitioner contends he was denied effective assistance of appellate counsel because counsel failed to timely notify petitioner of the intermediate state appellate court's disposition of his appeal and his right, and the appropriate deadlines, to file a petition for discretionary review. In response, respondent presents the following:

14. The standard of review for claims of ineffective assistance of counsel. (Answer pp. 16-17).

15. The absence of a federal constitutional right to counsel on state discretionary review and the resulting inability to complain, on federal habeas review, of the denial of effective assistance of counsel during state discretionary review. (Answer p. 18).

16. That petitioner failed to show prejudice as a result of counsel's failure to timely

      advise petitioner of the intermediate state appellate court decision or of his state law right to seek discretionary review. (Answer p. 18).

17. That petitioner failed to show he would have prevailed on discretionary review if timely advised by counsel. (Answer p. 18).

18. That this claim is moot since petitioner was afforded the opportunity to file a petition for discretionary review which was ultimately refused by the Texas Court of Criminal Appeals. (Answer p. 18).

The Court finds respondent's answer fully and accurately addresses the issues raised by petitioner in his fourth ground, and that respondent's position is well supported. Further, this Court agrees with respondent's analysis and finds petitioner's fourth ground is moot as he was afforded the opportunity to file a petition for discretionary review. Further, petitioner has not demonstrated he was prejudiced by appellate counsel's actions to establish ineffective assistance of counsel. Ground 4 is without merit and should be DENIED.

### E. Denial of Fair Trial - Trial Court Error

By his fifth ground, petitioner alleges he was denied a fair trial due to trial court error in dismissing the wrong alternate juror and allowing an improper juror to serve in deliberations. In response to these allegations, respondent presents the following:

19. The trial court's dismissal of the thirteenth and alternate juror, Terry Mix, at the conclusion of closing arguments was proper and petitioner's claim that the wrong alternate juror was dismissed is without merit. (Answer p. 19).

20. The trial court's decision to allow juror McLean to serve in deliberations was proper despite a non-responsive statement she made in regard to the Court's comments excusing Mix and thanking her for her service and attention. (Answer p. 19).

21. That petitioner's allegations are conclusory and lack support. (Answer p. 19).

22. That petitioner failed to meet his burden, under the AEDPA, of proving the state habeas court's denial of these claims was based on an unreasonable determination of the facts or was contrary to clearly established federal law. (Answer p. 19).

The Court finds respondent's answer thoroughly and accurately addresses all issues raised by petitioner in his fifth ground, and that respondent's position is well supported. The Court agrees with respondent's analysis and finds, petitioner has failed to meet his burden of proof under the AEDPA, has failed to demonstrate trial court error or the denial of a fair trial, and that Ground 5 is without merit and should be DENIED.

Respondent is correct in all of the above findings, arguments and analyses. Therefore, it is the opinion of the undersigned United States Magistrate Judge that petitioner's application for a writ of habeas corpus be DENIED.

## V.
## RECOMMENDATION

For the reasons set forth in respondent's Answer, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner JUSTIN SHAMIRE WHITE be DENIED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 19th day of January 2012.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## *** NOTICE OF RIGHT TO OBJECT ***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).